26   123
44   602

### THE STATE OF KANSAS V. WILLIAM A. LEWIS.

1. FALSE PRETENSE; *Statute Construed.* The crime defined in ¿ 94, ch. 31 of the act relating to crimes and punishments, is not that of making a false pretense, but the provision thereof is directed against one who obtains something, or in other words, one who gets possession of something purposely by effort—that is, by false pretense.

2. INFORMATION FOR FALSE PRETENSE, *Fatally Defective.* An information purporting to charge the offense of obtaining money or property by the means of false pretense, under ¿ 94, ch. 31, p. 339, Comp. Laws of 1879, must allege that the defendant did obtain from another, personal property, right in action, or other valuable thing or effects; and if the word *obtained* is not used, other words must be employed equivalent thereto, or having substantially the same meaning; otherwise the information is fatally defective, as failing to state facts constituting a public offense.

3. ——— *Insufficient Information.* An information purporting to charge the offense of obtaining money and property by means of false pretenses, under ¿ 94, ch. 31, p. 339, Comp. Laws of 1879, that only alleges the accused was paid money, checks and drafts by the party alleged to be defrauded, and nowhere charges that the accused obtained anything, nor contains words equivalent thereto, is fatally defective, as not stating facts constituting a public offense.

### *Appeal from Russell District Court.*

AT the March Term, 1881, of the district court, *William A. Lewis* was convicted of obtaining money or property by false pretenses. His motions for a new trial and in arrest of judgment being severally overruled, he was sentenced to a term of four and one-half years in the penitentiary, from which sentence he appeals. The facts appear in the opinion.

*J. G. Mohler,* and *C. A. Hiller,* for appellant:

The information is defective in the following particulars:

1. The names of persons comprising the firm of Lebold, Fisher & Co., an alleged copartnership, are not averred. The money, etc., is alleged to be the money of Lebold, Fisher & Co. This is not a sufficient allegation for any purpose whatever. (Comp. Laws 1879, Cr. Code, §§ 106, 124; Bac. Abr.,

title, *Abatement* [*f*], p. 11 B; 1 Chitty's Cr. L. 216; 36 Cal. 245; 1 Wharton's Cr. L., §§ 256, 285.)

2. "National Loan and Trust Company." What is it? A partnership, or a corporation? The information must state which. (Comp. Laws 1879, Cr. Code, § 214; 1 Chitty's Cr. L. 214; 36 Cal. 245; 8 N. W. Rep. 758.)

3. Burton is alleged to be an agent to make and negotiate a loan, without stating what the loan is to be — whether money, credit, etc. This is not such a statement of "the facts," as the statute prescribes. (Comp. Laws 1879, Cr. Code, §§ 103, 104.)

4. It charges an intent to defraud Burton, without alleging that any of Burton's property was obtained. Is it sufficient to make "false pretenses" to one person, thereby obtaining the property of another? We submit not. (Comp. Laws 1879, ch. 31, § 94; 7 Wis. 676; 4 Allen, 312; 11 Ohio St. 673; 43 Ind. 509.)

5. It charges an intent to defraud Lebold, Fisher & Co. by pretenses to Burton, without alleging that the defendant knew that Burton was an agent of Lebold, Fisher & Co. Must it not be charged that Lewis knew that Burton was the agent of Lebold, Fisher & Company?

6. It does not set forth that the abstract of title was in any way connected with the negotiation of a loan, or that any loan was ever negotiated. (46 Mo. 395; 13 Ind. 569, and cases cited; 20 Mich. 233.)

7. It does not aver that the loan was to be a first lien, or on unincumbered real estate.

8. It does not show that any of the pretenses were material.

9. It does not aver that the lands were incumbered, but only *that the records showed that they were incumbered.*

10. It does not set out or describe the deed or mortgage by date, amount, etc. (13 Bush, 285; 26 Am. R. 192; 11 Ohio, 282; 51 Ind. 111.)

11. It does not negative any pretenses but the first, and that only inferentially. (1 Chitty Cr. L. 230; 31 Mo. 413; 68 id. 140; 35 Ohio St. 81.)

12. It does not state what the rights and interests of Lebold, Fisher & Co., were, with safety to which Burton could pay off any liens.

13. It does not aver the value of the land of Somerville Simson. The land in question may have been of sufficient value to carry all the incumbrances then on it. as well as the incumbrance about to be placed thereon by Burton for Lebold, Fisher & Co.

14. It does not aver that the lien of $330 was not a valid lien or was not due and payable.

15. It is equally defective as to the other liens mentioned, and especially so as to the amount of the Moore mortgage. Were this merely nominal, where would be the intent to defraud? (26 Am. Rep. 192.)

16. It does not allege that Burton was an agent to pay liens, nor that the defendant had any knowledge of such agency.

17. It does not sufficiently describe any bank checks, or bank drafts. (20 Wis. 217; 3 Chitty Cr. L. 999; 1 Whar. Cr. L., §§ 347–9.)

18. It does not aver that the bank checks or drafts were of any value.

19. It alleges that Burton *paid*, but nowhere does it allege that the defendant Lewis *obtained* anything.

"It is essential to the validity of the indictment that it contain an averment, in terms, that the accused did *obtain* from another a thing of value; as, for instance, a check, or, in place of the word obtain, a word or words of equivalent or larger meaning may be employed, but the word contained in the statute must be clearly embraced in any such substitute." (34 Ohio St., 314–316, and authorities cited; 1 Whar. Prec. 528, and notes *h* and *j;* 2 Bish. Cr. Pro., § 163, and notes.)

20. It takes too much for granted, contains argumentative pleading, is bad for duplicity and uncertainty, and has defects tending to the prejudice of the substantial rights of the defendant upon the merits of the case.

21. The alleged false representation as to the abstract attached to information as "Exhibit A," and the abstract itself, are insufficiently pleaded. (1 Cush. 66.)

The jurors were not competent, and having failed to disclose the fact of their prejudice on their *voir dire*, the defendant should now be awarded a new trial for such prejudice and pre-adjudication. (Comp. Laws 1879, Civil Code, § 270; Cr. Code, § 205; 19 Ohio, 198; 7 Ohio St. 475; 1 Kas. 468; 9 id. 257, and particularly dissenting opinion; 11 id. 32; 15 id. 400; 22 id. 170; 24 id. 1; 1 Bishop Cr. Pro., § 910, and cases cited.)

*H. L. Pestana,* county attorney, and *Eastland & Pierce,* for The State:

1. Taking the information as a whole, we deem that it sufficiently charges the offense of obtaining money, etc., by means of false pretenses. The criminal code furnishes its own rules for determining the sufficiency of an information. (Comp. Laws 1879, Cr. Code, § 101; 3 Kas. 340.)

2. In criminal pleading, courts should look rather to substantial justice than artificial nicety. (67 Pa. St. 203; 8 Watts, 213.)

3. For rules to determine sufficiency of an information, see: Comp. Laws 1879, Cr. Code, §§ 103, 109, 110, 321; id. ch. 104, § 1, subdiv. 3; 3 Kas. 250; 14 id. 538.)

4. Defendant complains that the information does not aver the names of persons comprising the firm of Lebold, Fisher & Co. We submit this is not absolutely essential. (22 Ohio St. 220, 562.) At all events, it is not such a "defect" or "imperfection" as to prejudice the substantial rights of the defendant.

5. Nor do we perceive that a failure to allege that the "National Loan and Trust Company" was a partnership or a corporation, could materially prejudice Lewis.

6. Objection is made that "Burton is alleged to be an agent to make and negotiate a loan, without stating what the loan is to be," etc. We regard this as too technical. The ordinary understanding of men in general of the word "loan," when spoken of in the way of procuring or negotiating a loan, is, that a loan of money is meant. Lewis could not have been misled by this.

7. The allegation in the information of the payment by Burton of $330, etc., taken in connection with the fact that the jury in their verdict found that the payment made was $330, is, we think, sufficient, and that the words "bank check" and "bank draft" may be regarded as surplusage.

8. Counsel for the defendant urge many reasons in their brief to convince the court of the insufficiency of the information; that there is no averment that the lien of Lebold, Fisher & Co. was to be a first lien, and it does not show that any of the pretenses were material, etc.

We think the information, construed as a whole and not by fragments, does state that the defendant, Lewis, made certain statements and pretenses which were false, and the facts and circumstances as stated; that the false pretenses so made were very material to the interests of Lebold, Fisher & Co.; that he procured by his act the payment of a large sum of money belonging to Lebold, Fisher & Co., through their agent, Burton, under the belief that their mortgage was a first lien, when in fact it was no lien at all, so far as the records showed.

We think the information sufficiently direct and certain, as regards the offense, and that the objections urged as above are not tenable.

9. Counsel for appellant, on the motion for new trial, relied very strongly upon *Kennedy v. The State*, 34 Ohio St. 314–316, because neither is the word "obtained" nor any equivalent word or words used in the information. In that case there was a dissenting opinion by one of the judges.

In Webster's Unabridged Dictionary we find the definition of the word "obtained," and under the subdivision of syno-·nyms, to be "to get by one's own effort together with the effort of others." Now we say that is just what the information does state. That the statement made by Lewis to Burton "that everything was all straight," etc., and that Burton might and could, then and there, with safety to the rights and interests of said Lebold, Fisher & Co., pay off the liens and incumbrances, etc., was an "effort," an act of Lewis to

induce Burton to put forth the effort, the act on his part as the agent of Lebold, Fisher & Co. to pay off the liens.

The information in this regard might have been framed differently and in better form to charge the offense; but if it is *substantially* charged, it is sufficient.

10. The records in the office of the register of deeds of the Shaw and Moore mortgage, and the Abbe mortgage, were competent to show the condition of the records as to the Simpson land, and in support of the allegation in the information relating thereto.

11. Both Watson and Brandenburg (jurors) stated under oath that at the time, on their *voir dire*, they had no opinion as to the guilt or innocence of Lewis, and no opinion as to any material fact to be tried. If they had no opinion at that time, they were qualified jurors, and their statements virtually amounted to a renunciation of any previously-formed or expressed opinion. (7 Tex. App. 520; 8 id. 386; 7 Cowen, 369.)

That such pre-adjudication, if it existed, could not have had any prejudicial effect against the appellant, is apparent from the fact that Watson and Brandenburg were among the last three of the jury to agree to a verdict of guilty, and then only after a consultation and argument by the jury of some twenty-eight hours.

12. There is much conflict of testimony of jurors as to what was said about the testimony of E. O. C. Anthony.

Jurors cannot be heard to say they would not have agreed to the verdict unless it had been coupled with a recommendation to mercy. (12 Kas. 539.) That is a matter resting solely and alone in the mind of each juror. Nor can they be heard to say whether they did or did not regard the testimony of E. O. C. Anthony.

The opinion of the court was delivered by

HORTON, C. J.: The appellant was tried and convicted of obtaining money by false pretenses, and from the judgment of the district court appeals. Many errors are alleged, several

of which raise the question of the sufficiency of the information. Only one of these however it is necessary, in our opinion, to discuss, as that one is fatal to the information. Section 94 of the act of crimes and punishments, under which the information is drawn, reads: "Every person who, with intent to cheat or defraud another, shall designedly, by means of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, right in action, or any other valuable thing or effects whatsoever, upon conviction thereof shall be punished in the same manner and to the same extent as for feloniously stealing the money, property, or thing so obtained." The purpose of the information was to charge the appellant with the offense of obtaining money by a false pretense from W. S. Burton, agent of Messrs. Lebold, Fisher & Company, copartners, doing business at Abilene, in the county of Dickinson, with intent to cheat and defraud said Lebold, Fisher & Company. It alleges that upon certain false pretenses of the appellant, Burton paid to the said appellant "the sum of $330, in bank check, money and bank draft," then and there being the money, property and effects of Lebold, Fisher & Company; and also that upon false representations and pretenses of the appellant, said Burton paid and discharged certain liens and incumbrances, to the amount of $1,700, the same then and there being the money, property and effects of said Lebold, Fisher & Company. But nowhere in the information is it alleged that the appellant obtained any money, personal property, right in action, or any other valuable thing or effects whatsoever. It has often been held by this court, that while it is not necessary in an information or indictment to use the exact words of the statute in charging an offense, yet, other words conveying the same meaning must be employed. This raises the question whether the substitution of the word *paid*, as used in the information, is equivalent to the word *obtained*, in the statute. We think not. The crime defined in the statute is not that of making a false pretense, but the provision

9 — 26 KAS.

is directed against one who obtains something, or, in other words, who gets possession of something purposely, by effort, that is, by a false pretense. This being true, the information does not describe the offense, either in the exact words of the statute, or by the adoption of other words of substantially the same meaning with the words of the statute. The motion to quash the information ought to have been sustained, because no offense was charged therein; and the motion in arrest of judgment ought to have been sustained, because the facts as stated in such information do not constitute a public offense.' (*Kennedy v. State*, 34 Ohio St. 310.)

The court below, in overruling the motion in arrest of judgment, intimated that if the objection commented on had been pointed out on the hearing of the motion to quash, the motion would have been at that time sustained. We suppose from this remark, that the court meant this objection was not specifically commented upon, as the motion to quash, in fact, does fully embrace this omission in the information. The objection having been included in the motion to quash, it is properly presented here in the exception to the overruling of such motion, as well as in the overruling of the motion in arrest of judgment. The court below, in overruling the motion in arrest of judgment, held also, notwithstanding the omission in the information that Lewis obtained anything of value, a liberal construction of the information would make it sufficient to charge the offense within the statute; or rather, sufficient to inform the defendant of the nature of the charge against him. Now there are certain well-known rules regulating pleadings in criminal actions which cannot be violated. Although the accused might, with his knowledge of the transaction, well understand the offense for which he was arraigned, if the information had merely stated that at a certain time and place he defrauded, by false pretenses, the prosecuting witness of moneys and property to the amount of $330, yet such a statement in an information does not conform to the provisions of the statute, nor to the rules adopted in criminal pleadings, and is wholly insufficient. The pleader may

always have the statute before him in drawing informations, and we see no reason for extending the rule further, than that while the exact words of the statute in charging the offense need not be used, other words conveying the same meaning must be employed, if the exact words of the statute be omitted. There is no good reason why an offense charged in an information shall not be clearly set forth in plain and concise language according to the terms of the statute under which the information is drawn. To favor as liberal a construction of a criminal pleading as the district court intimates may be done, would in fact open the door to a disregard of the statute, and overthrow all the recognized rules governing criminal proceedings. There are additional minor objections to the information, pointed out in the brief of counsel for appellant, which seem to us should be corrected upon the filing of a new information, in order that the offense charged may be clearly set forth against the accused; but as all of these may be easily cured in a new information, we need only call the attention of counsel thereto.

The judgment of the district court will be reversed. The appellant will be returned from the penitentiary and delivered over to the jailer of Russell county, to abide the order of the district court of that county.

VALENTINE, J., concurring.

BREWER, J.: I am inclined to think the information was sufficient, but I concur in the judgment of reversal upon other grounds, the principal one being the incompetency of certain of the jurors.